Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, Florida 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAWN LAMB,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**HI.Q, INC.**, a Delaware registered corporation,<br><br>*Defendant,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Dawn Lamb ("Plaintiff Lamb" or "Lamb") brings this Class Action Complaint and Demand for Jury Trial against Defendant Hi.Q, Inc. ("Defendant" or "Health IQ") to stop Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call registry ("DNC) and to consumers who were called despite asking for the calls to stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Lamb, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Dawn Lamb is a resident of Vista, California.

2. Defendant Health IQ is a Delaware registered corporation headquartered in Mountain View, California. Defendant Health IQ conducts business throughout this District and the U.S.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed by the Defendant from this District.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

CLASS ACTION COMPLAINT
-2-

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. According to online robocall tracking service "YouMail," 4.6 billion robocalls were placed in December 2022 alone, at a rate of 165.2 million per day. www.robocallindex.com (last visited January 2, 2023).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

15. Hi.Q, Inc. operates using the d/b/a Health IQ Insurance Services Inc.[3]

16. Health IQ sells health insurance and Medicare plans to seniors throughout the US.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.healthiq.com/
[4] https://www.linkedin.com/company/Health IQ/about/

CLASS ACTION COMPLAINT
-3-

17. Health IQ relies on telemarketing in order to sell its insurance and Medicare plans to consumers.

18. Numerous Health IQ employees have posted complaints online about the Defendant directing them to cold call consumers in order to sell Health IQ's products, including a complaint that was posted as recently as December 28, 2022 from an employee who said they were expected to place 400 *cold calls* daily:

> **Kind of weird**
>
> Sales Support Specialist (Former Employee) - Remote - December 28, 2022
>
> Very short training period and they expect you to do 400 cold calls a day where people yell at you and cuss you out and you are supposed to update your tracker and respond to the group chat and a bunch of other things all at the same time [5]

19. Other complaints that were posted from Health IQ employees include:

- "***They will hire you as a sales agent promising you no outbound calling or cold calling but that is not the case.*** They will have you working their 'pre-sales' team which is making outbound calls to people they've called hundreds of time even though they have expressed no interest. They will tell you this isn't cold calling because we've talked to them before. If you have any integrity in your job or as a licensed agent, avoid this place at all costs."[6] (emphasis added)

- "When hired we were told we would not be doing outbound calls and that was a lie. That is all we do, in SEP they have unrealistic expectations out of the agents and the quality is impossible to pass 100%. They have lowered the quality passing bench mark because no one can pass with the amount of unnecessary repetition they force on the agents. Their script is terrible and very repetitive and there is no room for any casual conversation until 10 minutes into a call if you can even get that far! ***The leads they have are not good! We call people who do not want to talk to us or have told us to stop calling because they are called by us multiple times a day.*** The few managers I have interacted with are very nice and understand the frustration but they can not make the changes that need to be made. I could go on and on, but I am sure you get the point!"[7] (emphasis added)

- "Scripting and sales process changes almost weekly. They are trying to set themselves apart from every other company, I understand that part... but marketing

---
[5] https://www.indeed.com/cmp/Health-Iq/reviews/bait-and-switch?id=5b5169af196a2733
[6] *Id.*
[7] *Id.*

and lead sourcing don't align with the sales process at all. ***Leads are awful, 50 plus calls a day to get a single sale if you're lucky.*** Upper and lower management are always changing…"[8]

20. In addition, Health IQ employees have complained about the calls they had to place, stating that many or most of the calls were to the wrong number, such as:

> Dec 19, 2022 - Sales Support Specialist
>
> ✘ Recommend    ✘ CEO Approval    ✘ Business Outlook
>
> Pros
> No organization. Poor training. Zero effort from management. Decades old leads! Leads WELL OVER 10 years old. Most numbers are wrong numbers or the client is long dead. Very low conversion rates because the sales staff are undertrained rookies with not enough guidance. Simple job very low pay and laid off after 5 weeks via an email after my shift ended basically saying "by the way, today was your last day of employment"!
>
> Cons
> Read pros, it's all there!
>
> Advice to Management
> Get some well qualified higher ups! Train your subordinates well so that they can train theirs! If you're going to work ONLY in Medicare, then invest in quality leads. Trash leads and junk sales agents is why you failed this AEP [9]

21. Health IQ also places solicitation calls to consumers that have registered their phone numbers on the DNC.

22. To make matters worse, Health IQ employees continue to place unsolicited calls to consumers even after being instructed to stop calling, as per Plaintiff's experience.

23. Numerous consumers have posted complaints online about calls they received from Defendant Health IQ directly to the Health IQ Better Business Bureau page just in 2022 alone, including:

---

[8] *Id.*
[9] https://www.glassdoor.com/Reviews/Health-IQ-Sales-Reviews-EI_IE990627.0,9_KO10,15.htm

CLASS ACTION COMPLAINT
-5-

- "To make matters worse, Health IQ employees continue to place unsolicited calls to consumers even after being instructed to stop calling."[10]

- "Receive unwanted phone calls from Company daily. When I blocked the number, they change to the number & annoyance continues. Please make the stop. My mental health is severely impacted by these unwelcome calls."[11]

- "A company called Health IQ calls me 1 or 2 times everyday. I block the numbers on my phone and they just use another number."[12]

- "As others are saying Health IQ keeps calling non-stop , everyday I suffer from PTSD Vietnam era, I need them to stop calling."[13]

- "Health IQ calls me multiple times per day! I want it to STOP! I block each number they call from. 15-20 times a week is outrageous"[14]

- "Am receiving multiple phone calls from this provider for myself and my husband daily regarding ******** services and being on a recorded line even though phone number is on do Not Call list"[15]

- "I receive multiple unwanted calls a day a day from this company. I want this to stop!"[16]

- "Health IQ keeps calling my home using various phone numbers all day long. I want the calls to STOP. The calls are very annoying."[17]

- "Health IQ calls and calls and calls 3 to 4 times a day, 20 to 30 calls a week from Numerous different phone numbers. Numerous different States, Numerous different people. PLEASE get these harassing calls to STOP. I am on the Do Not Call list yet they still get through using Numerous different numbers. Never have I been so harassed by phone then from these Scammers! Please Get Them to Stop!"[18]

---

[10] https://www.bbb.org/us/ca/mountain-view/profile/medicare/health-iq-insurance-services-inc-1216-642075/complaints
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

CLASS ACTION COMPLAINT
-6-

- "Health IQ calls me multiple times a day, displaying different phone numbers, so it is not possible for me to block them. They continue to call me, despite the fact that I asked them to remove me from their calling list, and stop calling me."[19]

24. In response to these unsolicited telemarketing calls, Plaintiff Lamb files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF LAMB'S ALLEGATIONS

25. Plaintiff Lamb registered her cell phone number on the DNC on July 8, 2005.

26. Plaintiff Lamb's cell phone number is not associated with a business and is used like a landline phone number would be used in the home.

27. Plaintiff Lamb began receiving unsolicited telemarketing calls from Defendant Health IQ in October of 2022. The calls came in as early as approximately 5:00 AM, disturbing Plaintiff from her sleep.

28. The unsolicited calls continued through November of 2022.

29. On December 1, 2022 at 5:40 AM, Plaintiff received an unsolicited call from Health IQ, from 904-847-3147. This call was not answered.

30. Frustrated by all the calls, which disrupted Plaintiff's sleep, she called 904-847-3147 at 6:12 AM on December 1, 2022. Plaintiff spoke to an employee, who identified the company as Health IQ, and Plaintiff told the employee to stop calling her number, as the calls were affecting her sleep.

31. Despite her stop request, Plaintiff received an unsolicited call from Defendant Health IQ on December 2, 2022 at 5:48 AM from 949-519-2366. This call was not answered.

32. Plaintiff called 949-519-2366 back at 7:26 AM on December 2, 2022. Plaintiff spoke to an employee, who identified the company as Health IQ, and Plaintiff told the employee to stop calling her number.

---

[19] *Id.*

33. Defendant Health IQ placed additional unsolicited calls to Plaintiff Lamb's cell phone number on:

- December 3, 2022 from 855-249-2091 at 5:33 AM;
- December 4, 2022 from 904-847-3171 at 5:47 AM; and
- December 5, 2022 from 904-847-3195 at 6:10 AM.

34. Plaintiff called 904-847-3195 back at 11:14 AM on December 5, 2022. Plaintiff spoke to an employee, who identified the company as Health IQ, and Plaintiff told the employee to stop calling her number.

35. Plaintiff called 904-847-3195 right back at 11:14 AM on December 5, 2022. Plaintiff spoke to a different employee, who also identified the company as Health IQ, and Plaintiff told the employee that she wants the calls stopped. She then asked to speak to a supervisor, but the employee hung up on her after putting Plaintiff on hold.

36. Despite multiple stop requests, Plaintiff still received the following unsolicited calls from Defendant Health IQ to her cell phone number:

- December 6, 2022 at 5:43 AM from 904-847-3038;
- December 7, 2022 at 6:29 AM from 904-663-6103;
- December 8, 2022 at 5:55 AM from 904-436-6957;
- December 9, 2022 at 7:17 AM from 904-663-6084;
- December 12, 2022 at 10:05 AM from 904-558-9247; and
- December 13, 2022 at 6:37 AM from 949-594-0365.

37. The unsolicited calls finally came to a stop when Plaintiff's attorneys sent a cease and desist letter to Health IQ on December 13, 2022.

38. Plaintiff Lamb has never provided consent to Health IQ to receive solicitation calls and has not been looking to get insurance or Medicare coverage.

39. The unauthorized solicitation calls that Plaintiff received from Health IQ, as alleged herein, have harmed Plaintiff Lamb in the form of mental distress, annoyance, nuisance, and

invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

40. Seeking redress for these injuries, Plaintiff Lamb, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

41. Plaintiff Lamb brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Health IQ called on more than one time to their residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Health IQ called more than one time to their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.
>
> **Early/Late Calls Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Health IQ called more than one time to their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

42. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Lamb anticipates the need to amend the Class definitions following appropriate discovery.

43. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

    (c)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

    (d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

45. **Adequate Representation**: Plaintiff Lamb will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Lamb has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Lamb and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Lamb nor her counsel have any interest adverse to the Classes.

46. **Appropriateness**: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Lamb.

47. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lamb and the Do Not Registry Class)**

48. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

51. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Lamb and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

52. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Lamb and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

53. As a result of Defendant's conduct as alleged herein, Plaintiff Lamb and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

54. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lamb and the Internal Do Not Call Class)**

55. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

56. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are

made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

57.     Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class on behalf of Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

58.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

59.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's

CLASS ACTION COMPLAINT
-13-

conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

### THIRD CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Lamb and the Early/Late Calls Class)

60. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

61. Under 47 C.F.R. § 64.1200(c), "[n]o person or entity shall initiate any telephone solicitation to … [a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)."

62. Defendant placed calls to Plaintiff and members of the Early/Late Calls Class before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

63. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

64. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lamb individually and on behalf of the Classes, prays for the following relief:

    a. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Lamb as the representative of the Classes; and appointing her attorneys as Class Counsel;

    b. An award of actual and/or statutory damages and costs;

CLASS ACTION COMPLAINT
-14-

  c. An award of attorney's fees;

  d. An order declaring that Defendant's actions, as set out above, violate the TCPA;

  e. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

  f. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Lamb requests a jury trial.

DATED this 8th day of March, 2023.

         **DAWN LAMB**, individually and on behalf of all others similarly situated,

         By: /s/ *Rachel E. Kaufman*
         Rachel Elizabeth Kaufman
         Kaufman P.A.
         237 South Dixie Highway, 4th Floor
         Coral Gables, FL 33133
         (305) 469-5881
         Email: Rachel@kaufmanpa.com

         *Attorney for Plaintiff and the putative Classes*